THOMAS A. CLAY, PROSECUTOR, v. CIVIL SERVICE COMMISSION, BOARD OF HEALTH OF PATERSON AND J. ALEXANDER BROWNE.

Submitted July 1, 1915—Decided January 4, 1916.

1. The General Health acts of 1887 (*Pamph. L., p.* 80; *Comp. Stat., p.* 2656) repealed the prior acts of 1880 (*Pamph. L., p.* 206) and 1881 (*Pamph. L., p.* 160), so far as not already repealed by section 44 of the act of 1886. *Pamph. L., pp.* 280, 296.
2. The office of local health officer, or health inspector, since the passage of the act of 1887, *supra,* is an office subordinate to the board of health and incompatible with membership in that body.

---

On *certiorari.*

Before Justices PARKER, MINTURN and KALISCH.

For the prosecutor, *William I. Lewis.*

For the civil service commission, *Josiah Stryker* and *John W. Wescott,* attorney-general.

For the respondent Browne, *Ward & McGinnis.*

The opinion of the court was delivered by

PARKER, J. This is a *certiorari* sued out by the incumbent of the office or position of health officer of Paterson, whose aim is to set aside a decision or order of the civil service commission, directing that J. Alexander Browne, one of the defendants, "be reinstated to the position of health officer, from which he has been illegally ousted."

It is thus manifest that the title to an office or position is involved; and the point is made at the outset, that *certiorari* is not the proper remedy. If the subject of dispute is a "position," *certiorari* is proper. *McGrath* v. *Bayonne, 85 N. J. L.* 188. If an office, *certiorari* is still proper in a case such as this where an incumbent challenges some official action calculated to interfere with his enjoyment of the office. *Moore* v. *Bradley Beach,* 94 *Atl. Rep.* 316, and cases cited.

We pass to the merits.

In 1882, the city of Paterson, through its board of aldermen, passed an ordinance based on the acts of 1880 (*Pamph. L., p.* 206) and 1881 (*Pamph. L., p.* 160), organizing a board of health of seven members. Three of these were to be the city physician, health inspector and register of vital statistics; the other four were to be appointed for original terms of three, four, five and six years, and thereafter for three years each. The health inspector was to be a physician appointed by the board of health, and to hold office for three years and until his successor should be appointed and qualified. The effect of this was to leave the board of health incomplete until it appointed the health inspector, whereupon he became the seventh member *ex-officio.*

This ordinance remained unchanged until December 7th, 1914, although in the interim several health acts were passed by the legislature, notably the general act of 1886 (*Pamph. L., p.* 280), of 1887 (*Pamph. L., p.* 80; *Comp. Stat., p.* 2656), and an act of 1895 (*Pamph. L., p.* 156; *Comp. Stat., p.* 2684), applicable to Paterson, which gave rather plenary powers to the city council in the matter of organizing a local board of health. Evidently acting under this, the board of aldermen undertook to reorganize the board of health by raising the number to ten, all of whom were to be specially appointed; eliminating the city physician, health inspector and register of vital statistics as *ex-officio* members of the board, but leaving their offices and their tenure thereof otherwise unaffected. This was done in the form of an amendment of sections 2 and 7 of the ordinance of 1882. The rest remained unchanged.

During the interval, between 1882 and 1914, over thirty years, the board presumably appointed a health inspector every three years under the ordinance. At all events it appointed Dr. Browne in 1903, and reappointed him in 1906 and 1909. In 1912, he was not reappointed, but held over, notwithstanding some attempted action by way of appointment, until January, 1915, when Prosecutor Clay, a member of the new board of ten, was appointed by the board as health officer and took possession of the office, ousting Browne. Paterson, in November, 1912, had adopted the Civil Service act of 1908, and the Commission having put health officers on the competitive list, Browne appealed to them, and the Commission made the order now complained of, besides refusing to certify Clay's salary.

The case would present some intricate and difficult questions for solution if we considered the ordinance of 1882, as amended in 1914, to be a material factor in the situation; but we do not so consider it. No notice appears to have been taken by the board, of the important General Health acts of 1886 and 1887, the latter of which is the basis of the law as it stands to-day. A careful reading of sections 9 and 31 of that act satisfies us that it does not contemplate the *status* of the

official called a health inspector or health officer, in any other light than as subordinate to the board of health and not as a member of it, or having a vote therein. The act is a general one, embracing the whole subject, and hence is a repealer of prior legislation inconsistent therewith. *Harrington Sons Co.* v. *Jersey City,* 78 *N. J. L.* 610. In fact, by section 38, it expressly repeals all acts and parts of acts which are in anywise in conflict with its provisions; and without any reservation of rights such as is contained in the specific repealer in the act of 1886, section 44. It is true that section 11 saves existing boards organized in conformity with section 9; but, as we have said, the idea of a health officer as a member of the board, or in any other aspect than that of a subordinate, is not within its scheme. It follows, therefore, that the acts of 1880 and 1881 fell as a foundation for the ordinance of 1882, and that the ordinance fell with them, so far at least as related to the *status* of health inspector.

We consider, then, that Dr. Browne's original appointment, in 1903, rested in law on section 31 of the act of 1887, which provided for the fixing of a term of office by the board. No such term appears to have been fixed. Evidently, that prescribed by the ordinance was relied on. He seems to have been actually holding over in office when the Civil Service act went into effect, and to have remained therein for over two years thereafter. No claim is made that the office of health officer, under the act of 1887, is not lawfully classified by the commission. The office claimed by Clay is that existing under the health laws of the state, *i. e.,* the act of 1887 and that of 1903 (*Comp. Stat., p.* 2675, *pl.* 56, 57, 58), providing for examination and certification of health officers. This is the same office to which, as we have just said, Dr. Browne was appointed. There is only one such office at present, and he is protected in his tenure thereof by the Civil Service law and the classification thereunder. Consequently, Dr. Clay could not lawfully be appointed thereto, and no legal injury is done him by the order complained of. *Loper* v. *Millville,* 53 *N. J. L.* 362.

The writ of *certiorari* will be dismissed, with costs.